**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

SAMMY ARMIJO,

     Plaintiff,

v.                                                                          Civ. No. 19-1003 GJF

ANDREW SAUL, *Commissioner of*
*the Social Security Administration*,

     Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 17] ("Motion"). The Motion is fully briefed. ECF 19 (response); ECF 21 (reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** Plaintiff's Motion, and **DISMISS** this case **WITH PREJUDICE**.

## I.  BACKGROUND

Plaintiff, Sammy Armijo, was born in 1977. Administrative Record ("AR") at 186, 455. He was incarcerated for seventeen years between 1995 and 2012. *Id.* at 41, 221. While incarcerated, Plaintiff earned his GED. *Id.* at 45, 198. Upon release, he worked as a cook between January and April 2012. *Id.* at 189, 198, 203. Plaintiff applied for several other positions for which he was denied due to his criminal history. *Id.* at 47–48, 220, 455. In July 2015, he was again incarcerated until sometime in January 2016. *Id.* at 280, 359. During that time, Plaintiff began receiving mental health treatment. *See id.* at 280–93.

After his release from custody, Plaintiff began seeing Dr. Richard Laughter for treatment

for opioid addiction with Suboxone. AR 1167, 888–89.[1] This program required Plaintiff to attend a number of weekly counseling appointments split between Dr. Laughter and an associated social worker, MSW Beverly Tamanini. *See id.* at 818, 1169, 1256–57. Dr. Laughter diagnosed Plaintiff with "moderate" opioid use disorder, bipolar I disorder, post-traumatic stress disorder, and generalized anxiety disorder. *Id.* at 465.

Plaintiff applied for social security disability benefits, claiming that as of February 2015 he could no longer work due to the following mental conditions: anxiety, post-traumatic stress disorder, depression, and bipolar disorder. *Id.* at 69. In March 2017, the Social Security Administration ("SSA") initially determined that Plaintiff was not disabled. *Id.* at 68–80, 98–101. Upon reconsideration, the SSA affirmed its original decision. *Id.* at 83–94, 102–04. In November 2018, after a hearing conducted at Plaintiff's request, an Administrative Law Judge ("ALJ") found that Plaintiff had the capacity to perform a full range of work at all exertional levels, but that he had several non-exertional limitations. *Id.* at 22. Based on that finding, the ALJ determined that Plaintiff could perform a number of jobs that existed in significant numbers in the national economy. *Id.* at 30. Accordingly, the ALJ found that Plaintiff was not disabled. *Id.* at 30–31. In August 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, after which Plaintiff timely petitioned for relief. *Id.* at 1; ECF 1.

---

[1] Suboxone is a drug used to treat opioid dependence or addiction by alleviating withdrawal symptoms. *Buprenorphine/Naloxone (Oromucosal Route, Sublingual Route)*, MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/buprenorphine-naloxone-oromucosal-route-sublingual-route/description/drg-20074097 (last visited Oct. 28, 2020).

## II.  PLAINTIFF'S CLAIMS

Plaintiff asserts that the ALJ erred in three ways. ECF 17 at 1. First, he contends that the ALJ did not properly evaluate the opinion of Dr. Laughter, Plaintiff's treating psychiatrist. *Id.* Second, Plaintiff avers that the ALJ erred "by picking and choosing amongst the moderate limitations found by non-examining psychologist, Howard G. Atkins, PhD." *Id.* Finally, Plaintiff argues that the Residual Functional Capacity ("RFC")[2] was not based on substantial evidence because the ALJ "relied on flawed findings by non-examining psychologist, Mark McGaughey, PhD." *Id.* at 1–2.

## III.  APPLICABLE LAW

### A.  Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v.*

---

[2] The RFC describes the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). The RFC is formulated "based on all the relevant evidence" in the record. *Id.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high.   Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted).   "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Id. (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

4

Ultimately, if the correct legal standards were applied and substantial evidence supported the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

**B. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[3] or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to

---

[3] If the claimant can show that he has a listed impairment, he will be found to be disabled and the analysis stops. 20 C.F.R. § 416.920(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id*.

perform other work in the national economy in view of his age, education, and work experience."
*Yuckert*, 482 U.S. at 142, 146 n.5.

## IV.  THE ALJ'S FINDINGS AND DECISION

"After careful consideration of all the evidence," the ALJ concluded that Plaintiff was not "under a disability within the meaning of the Social Security Act since December 15, 2016, the date the application was filed." AR at 20.

### A.  Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2016. AR at 22. At step two, the ALJ found that Plaintiff had the following severe impairments: "Affective Disorders; Post-Traumatic Stress Disorder; Substance Abuse Disorder." *Id.* (citing 20 C.F.R. § 416.920(c)). At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, satisfied the criteria of a listed impairment. *Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).

### B.  Step Four[4]

#### 1.  *Phase One: Plaintiff's RFC*

The ALJ determined that Plaintiff had the RFC to perform work at all exertional levels. AR at 23. With regard to non-exertional limitations, however, the ALJ found that:

> [Plaintiff] is limited to performing simple, routine tasks and in the use of judgment is limited to simple work-related decisions. He can occasionally interact with supervisors and co-workers. He may have infrequent[] superficial contact with the public. He is limited to tolerating few changes in a routine work setting. His time

---

[4] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, he could meet the physical and/or mental demands of his past relevant work. *Id.*

off task can be accommodated by normal breaks.

*Id.* at 23–24.

The ALJ based his finding on the objective medical evidence and relevant medical opinions in the record. *Id.* Plaintiff claimed that he had trouble talking, remembering, completing tasks, concentrating, understanding, following instructions, getting along with others, sleeping, handling stress, and accommodating changes in routine. *Id.* at 24. Nonetheless, the ALJ found that while Plaintiff's medically determinable impairments could have reasonably caused the claimed symptoms, Plaintiff's statements concerning the intensity of those symptoms were not consistent with the evidence in the record. *Id.* at 26.

### a.  Medical and Other Evidence

The ALJ primarily considered medical and other evidence derived from the treatment notes prepared by Dr. Laughter and MSW Tamanini. *See id.* at 24–26. For instance, Plaintiff reported that he was increasingly taking responsibility for caring for his children and that he had been attending their sporting events. *Id.* at 25 (citing AR at 493). He also discussed working odd-jobs for a relative and another individual. *Id.* at 26–27 (citing AR at 586, 597, 605). Plaintiff told MSW Tamanini on November 16, 2016, that he had been hired by a restaurant. *Id.* at 26 (citing AR at 575). The treatment providers consistently observed Plaintiff to have appropriate hygiene, to speak coherently, and to engage cooperatively. *Id.* (citing AR 463, 471, 482). Plaintiff usually behaved either appropriately or unremarkably. *Id.* (citing AR at 463–65, 471, 478, 482, 490, 493, 496, 504, 509, 547).[5] The ALJ also discussed the treatment notes describing Plaintiff's challenges with

---

[5] The ALJ also cited to Plaintiff's treatment records from when he was incarcerated in 2015, showing similar reports. *See* AR at 280–81, 284, 286, 288, 292–93, 310, 357–58, 361–65, 367–72, 374–87, 389–90, 394, 397–404.

anxiety and anger. *Id.* at 25–26 (citing AR at 490).

> b. Opinion Evidence

The ALJ considered the opinions of Carl B. Adams, Ph.D., Richard Laughter, M.D., Mark McGaughey, Ph.D., and Howard Atkins, Ph.D. *Id.* at 24–29. The ALJ gave "great weight" to the opinions of Drs. Adams, McGaughey and Atkins, *id.* at 25, 28–29, but only "limited weight" to Dr. Laughter's opinion. *Id.* at 27.

Dr. Adams is an "independent psychological consultative examiner," who examined Plaintiff on March 13, 2017. *Id.* at 25. Dr. Adams reported that Plaintiff appeared uncomfortable during the interview but that he was able to pay attention and concentrate, made adequate eye contact, and expressed himself well. *Id.* (citing AR at 454). In addition, Dr. Adams remarked that considering the length of time Plaintiff spent in custody that "it would be expected that he would have some paranoias, fear, [and] discomfort being in public around people . . . since he has not been out of custody that long." *Id.* (quoting AR at 455). Dr. Adams opined that Plaintiff's long-term and short-term recall were in "the low average to borderline range" and that his insight was grossly intact. *Id.* (citing AR at 456). Dr. Adams concluded that Plaintiff had a mild limitation with complex instructions, no limitation with short and simple instructions, a moderate limitation with concentration and task persistence, a moderate to severe limitation interacting with the public, a mild to moderate limitation in adapting to changes, and that he could manage his own finances. *Id.* (citing AR at 456). The ALJ gave Dr. Adams's opinion great weight because it was based on an examination of Plaintiff and was consistent with Plaintiff's self-reporting. *Id.*

Dr. McGaughey, a State agency psychological consultant, reviewed Plaintiff's record in March 20, 2017, and opined that Plaintiff had a range of moderate limitations. *Id.* at 75–78. Dr.

McGaughey concluded that Plaintiff had the capacity to understand, remember, carry out simple instructions, complete a routine workday, exercise reasonable judgment, and respond appropriately to changes in a routine work setting. *Id.* at 75. In addition, Dr. McGaughey noted that "on an incidental basis," Plaintiff could interact with coworkers, supervisors, and the general public. *Id.* The ALJ gave Dr. McGaughey's opinion "great weight" because it was "consistent with the record as a whole and he is familiar with the program requirements." *Id.* at 29.

In April 2017, Dr. Atkins, also a State agency psychological consultant, reviewed the record and affirmed Dr. McGaughey's assessment. *Id.* at 29 (citing AR at 89). Dr. Atkins determined that the "medical evidence supports [that] the claimant can read, write, understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate [for] short periods, interact appropriately on a superficial level, and respond appropriately to changes in a routine work setting if introduced slowly." AR at 92. The ALJ gave Dr. Atkins's opinion "great weight" because it was "consistent with the record as a whole and he is familiar with the program requirements." *Id.*

For his part, Dr. Laughter completed two "Mental Impairment Questionnaires." In November 2017, Dr. Laughter opined that Plaintiff's symptoms resulted in six extreme functional limitations and five "marked"[6] limitations. AR at 460. Dr. Laughter estimated that Plaintiff's impairments would cause him to miss work more than three times a month and that Plaintiff could not work "a full-time job, working 8 hours a day, 5 days per week, on a regular and continuing basis." *Id.* In a second Questionnaire completed in July 2018, Dr. Laughter found that Plaintiff had

---

[6] "Marked" was defined as "more than moderate, but less than extreme." AR at 460.

one slight limitation, two moderate limitations, five marked limitations, and four extreme limitations. *Id.* at 1675. Dr. Laughter estimated that Plaintiff would be absent from work once or twice a month but maintained that Plaintiff was incapable of working a full-time job. *Id.*

The ALJ accorded Dr. Laughter's opinion only limited weight, despite his lengthy treatment history with Plaintiff, because his opinion was not well explained and was inconsistent with the doctor's own and MSW Tamanini's treatment notes. *Id.* at 27. Specifically, the ALJ noted that Dr. Laughter routinely described Plaintiff as polite, cooperative, alert, oriented with good insight and judgment, and that he maintained appropriate hygiene, spoke linearly and coherently, and had intact concentration. *Id.* at 28 (citing AR at 462–64, 470–72, 481–82, 484, 490, 496–98, 524–27, 536–540, 550–553, 567–72). In addition, the ALJ observed that Dr. Laughter had consistently diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") score of 54. *Id.* at 38 (citing AR at 465, 480, 484, 491, 494, 498, 505, 513, 519, 522–23, 527, 532, 535–36, 540, 545, 548–49, 553, 556, 560–61, 564, 566, 573, 575, 582, 584, 587–88, 592, 595, 598–99, 604, 606, 609, 1163).[7] The ALJ reasoned that he could not discern the degree to which that score represented Plaintiff's limitations because regardless of what Plaintiff reported visit-to-visit, Dr. Laughter gave Plaintiff the same score. *Id.* at 28.

### 2. *Phases Two and Three*

Because Plaintiff did not have past relevant work experience, the ALJ ended his step four

---

[7]  A GAF score of 51-60 indicates moderate mental symptoms "(e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Brown v. Astrue*, No. 11-4122-SAC, 2012 WL 5878502, at *3 n. 1 (D. Kan. Nov. 12, 2012) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-IV-TR 34 (4th ed. 2000) (emphasis in original). "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004)).

analysis and moved on to step five of the sequential evaluation process. *Id.* at 29 (citing 20 C.F.R.
§ 416.965 (describing how the SSA considers work experience)).

### C. Step Five

The ALJ asked "the vocational expert whether jobs exist[ed] in the national economy for
an individual with the [Plaintiff's] age, education, work experience, and residual functional
capacity." *Id.* at 29. The vocational expert testified that Plaintiff could perform the following work:
(1) hospital cleaner; (2) groundskeeper; and (3) laundry worker. *Id.* at 30, 64–65. The ALJ
"determined that the vocational expert's testimony [was] consistent with the information contained
in the Dictionary of Occupational Titles." *Id.* at 30. Accordingly, the ALJ concluded "that,
considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the
[Plaintiff was] capable of making a successful adjustment to other work that exist[ed] in significant
numbers in the national economy." *Id.* Consequently, the ALJ found that Plaintiff was not disabled.
*Id.* at 30–31.

## V.   DISCUSSION

### A.   The ALJ Did Not Err in Evaluating Dr. Laughter's Opinion

Plaintiff argues that the ALJ erred "by failing to properly evaluate the opinions of treating
psychiatrist, Richard K. Laughter, MD." ECF 17 at 1. In doing so, Plaintiff raises five potential
points of error. First, "the ALJ collapsed the 2-step 'treating physician rule' into 1 step and failed
to explain why he did not give Dr. Laughter's opinions controlling weight." ECF 17 at 13. Second,
"the ALJ did *not* properly consider Dr. Laughter's expertise or his extensive treating relationship
with [Plaintiff]." *Id.* (emphasis in original). Third, "the ALJ mischaracterized Dr. Laughter's
treatment notes, incorrectly claiming they were 'identical' . . ., and never re-contacted the provider

to gain clarity." *Id.* at 15. Fourth, "the ALJ claimed that Dr. Laughter's opinions were not consistent with his own treatment notes, or those of MSW Tamanini; however, he only generally cites to the record and does *not* explain the inconsistencies." *Id.* at 18 (emphasis in original). Finally, "the ALJ rejected Dr. Laughter's opinions because Dr. Laughter stated that due to the severity of his impairments, [Plaintiff] was unable to work . . ., an issue reserved to the Commissioner." *Id.*

### 1. *The ALJ Did Not Err in Applying the Treating Physician Rule*

The treating physician rule requires the ALJ to engage in a two-step inquiry. First, the ALJ decides whether the opinion is owed controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Such weight is *only* warranted where the opinion is *both* (1) supported by medically acceptable clinical and laboratory diagnostic techniques and is (2) consistent with other substantial evidence in the record. *Id.* The Tenth Circuit has made clear that "[i]f the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* The second inquiry is triggered if the ALJ finds that the opinion is not owed controlling weight. *Id.* In that case, the ALJ must apply a set of six-factors supplied by the regulations to assess what if any weight to assign the opinion. *Id.*

The ALJ correctly applied step one of the treating physician rule when he determined that "while [Dr. Laughter] has had a lengthy treatment record with the [Plaintiff] … his opinion … [was] not consistent with his own treatment notes or the treatment notes of the [Plaintiff's] counselor during the same period." AR at 27 (citation omitted). An ALJ may properly decline to give a treating physician's opinion controlling weight if it is unsupported by medically acceptable techniques *or* if it is inconsistent with other substantial evidence in the record. *See Krauser*, 683 F.3d at 1330. The ALJ correctly observed that although Dr. Laughter opined that Plaintiff was

severely limited in several respects, the doctor's *own documentation* reflected much milder symptoms. AR at 27–29. For example, Dr. Laughter opined that Plaintiff had an *extreme* limitation in his "ability to maintain socially appropriate behavior and adhere to basic standards of neatness/cleanliness," AR 27, 460, but his treatment notes almost always reflected, from appointment to appointment, that Plaintiff behaved politely and cooperatively and that he arrived with appropriate hygiene. *Id.* at 28 (citing AR at 581, 591–92, 603, 622–23, 635–36).

Contrary to Plaintiff's position, the ALJ's decision is not reversible on the grounds that he failed to adhere to a formalistic application of the two-step treating physician rule. Instead, the Tenth Circuit has merely required the ALJ to articulate reasons sufficient for later review. *See Oldham,* 509 F.3d at 1258. The Court finds that the ALJ documented "sufficiently specific" reasons for declining to give Dr. Laughter's opinion controlling weight. *See id*.

Plaintiff relies on *Baiett v. Berryhill*, Civ. No. 16-467 GJF, 2017 WL 5952190, at *15 (D.N.M. Nov. 30, 2017), for the proposition that it is "legal error to fail 'to make findings with respect to the first step of the two-step process for evaluating whether to grant a treating physician's opinion controlling weight.'" ECF 17 at 13. There, the Court remanded an ALJ's decision because she failed "to make findings with respect to the first step of the two-step process for evaluating whether to grant a treating physician's opinion controlling weight." *Baiett*, 2017 WL 5952190, at *8 (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007)). Importantly, the ALJ did "not appear to have made *either* of the required step one findings to decide whether to assign controlling weight to" the opinion in question. *Id.* (emphasis added). As discussed *supra*, the ALJ in the instant case *did* make one of the required step one findings. *See* AR at 27–28; *see also* 20 C.F.R. § 404.1527(c)(2).   Consequently, *Baiett* is distinguishable.

### 2.   *The ALJ Did Not Err in Considering Dr. Laughter's Expertise*

Plaintiff contends that the "ALJ did *not* properly consider Dr. Laughter's expertise or his extensive treating relationship with [Plaintiff]." ECF 17 at 13 (emphasis in original). In support, Plaintiff says that the ALJ understated how often Plaintiff was treated by Dr. Laughter. ECF 17 at 13–14. Plaintiff quotes the ALJ as describing the frequency of appointments as occurring "usually . . . once a month." ECF 17 at 14–15 (citing AR 27). Unfortunately, here, Plaintiff's allegation that the ALJ mischaracterized the record appears *itself* to be a mischaracterization of the record. The ALJ wrote that:

> The weight is given because while [Dr. Laughter] has had a lengthy treatment record with [Plaintiff], usually seeing him *at least* once a month, his opinion is not well explained and is not consistent with his own treatment notes or the treatment notes of [Plaintiff's] counselor during the same period.

AR at 27 (emphasis added). Plaintiff's treatment program with Dr. Laughter had three phases. *See Id.* at 514–15. In the first two phases, Plaintiff met with Dr. Laughter biweekly and in the third he met with Dr. Laughter once a month. *Id.* In other words, Plaintiff *did* meet with Dr. Laughter *at least* once a month—as correctly characterized by the ALJ. Therefore—as a factual matter—the Court does not find that the ALJ mischaracterized the record as alleged by Plaintiff. Therefore, to the extent that the ALJ was required to correctly characterize how often Plaintiff was treated, the Court holds that the ALJ did not err in doing so.

Plaintiff further asserts that the ALJ erred in weighing the opinions of Drs. McGaughey and Adams more heavily than that of Dr. Laughter.[8] But the scope of the Court's review is to

---

[8]  Specifically, Plaintiff argues that Dr. McGaughey's opinion should have been given less weight because it was based on a review of Plaintiff's treatment records from when he was incarcerated in 2015. ECF 17 at 14. In addition, Plaintiff insists that Dr. Laughter's opinion should have been given more weight because he is a psychiatrist and because Drs. Adams and McGaughey are only psychologists. *Id.* at 15.

determine only whether the ALJ "appl[ied] correct legal standards" and "show[ed] . . . he has done so." *Hamlin*, 365 F.3d at 1214. Plaintiff, however, does not contend that the ALJ misapplied—or failed to document his application of—the law. *See* ECF 17 at 14–15. Instead, Plaintiff's argument amounts to a request that the Court come to a different conclusion, particularly by reweighing the evidence—which the Court cannot do. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

### 3. The ALJ Was Not Obligated to Recontact Dr. Laughter to Gain Clarity on His Treatment Notes

Plaintiff next contends that the ALJ mischaracterized Dr. Laughter's treatment notes by claiming that they were "identical" and that he had an obligation to recontact Dr. Laughter to gain clarity. ECF 17 at 15 (citing AR at 28 ("[Dr. Laughter's] treatment notes from November 18, 2016 to June 17, 2018 are identical'")).

When the SSA has insufficient evidence or cannot reach a conclusion, it will take one or more steps to "resolve the inconsistency or insufficiency." 20 C.F.R. § 416.920b(c)(1)-(4) (2012). One step identified by the regulations is to recontact a medical source. 20 C.F.R. § 416.920b(c)(1) (2012). A deficient medical source will only be evaluated after "every reasonable effort to obtain evidence" from that source is made. 20 C.F.R. § 416.912(e) (2015). The Tenth Circuit has interpreted these regulations to put an affirmative duty on the SSA to recontact "a treating physician when the information the doctor provides is 'inadequate . . . to determine whether'" the claimant is disabled. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (quoting 20 C.F.R. § 416.912(e)). That duty arises only upon "the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician," *not* the rejection of the treating physician's opinion. *Id.* (quoting 20 C.F.R. § 416.912(e)).

The ALJ clearly found that Dr. Laughter's treatment notes were "adequate for

consideration; that is, [they were] not so incomplete that [they] could not be considered." *Id.* The ALJ cited large portions of Dr. Laughter's treatment notes in assessing the weight he would give his opinion. *See* AR at 28. Although the Court agrees with Plaintiff that the ALJ appears to have mischaracterized the record by stating that almost two years' worth of Dr. Laughter's treatment notes were identical,[9] that mischaracterization did not materially impact the ALJ's ability to decline to give controlling weight to Dr. Laughter's opinion or to determine that Plaintiff was not disabled. The ALJ discounted Dr. Laughter's opinion based on the large disconnect between the severe symptoms he identified and the relatively mild symptoms he documented. *See* AR at 28. Moreover, the ALJ supported this determination with citations to large swaths of Dr. Laughter's treatment notes, indicating that the ALJ had adequate information to evaluate the doctor's opinion. *Id.* Because the ALJ had enough information to consider Dr. Laughter's opinion, he was not obligated to recontact him.

### 4.   *The ALJ Did Not Impermissibly Cherry-Pick the Evidence*

Plaintiff insists that the ALJ impermissibly cherry-picked the evidence in the record, addressing only the treatment notes supporting a determination of "not disabled." ECF 17 at 18 & n. 14.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The "ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010 (citing *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).

---

[9] *See, e.g.*, AR at 567–68, 928, 969–70, 992, 1037–38, 1041, 1106, 1164.

For this point, Plaintiff relies on *Montoya v. Saul*, 1:18-cv-00831-LF, 2019 WL 6167951 (D.N.M. Nov. 20, 2019). In that case, the court found reversible error based on an ALJ's cherry-picking of select pieces of a treating physician's treatment records. *Id.* at *10. The ALJ found that the physician's records were not consistent with his examination findings because the physician noted that the claimant had "a non-antalgic gait, no assistive device, an erect posture, and the claimant [was] in no acute distress," a week before the physician completed his medical source statement. *Id.*[10] The court observed that the note in question was copied and pasted throughout the treating physician's records. *Id.* at *11. In other words, the note was a vestige of an older examination and was not indicative of the plaintiff's condition a week before the medical source statement was completed. *Id.* In fact, the *bulk* of the treating physician's records showed that the plaintiff reported suffering "significant pain." *Id.* Because the ALJ's decision was based on a single historical record (out of many other contrary records), the court ruled that the ALJ's decision was not supported by substantial evidence. *Id.* at *11.

In this case, Plaintiff says that the ALJ left out treatment records showing that Dr. Laughter observed him to have anxiety, instability, and anger issues. ECF 17 at 18 n.14. But the ALJ did address Plaintiff's documented struggles with anger. AR at 25.[11] And the ALJ also discussed Dr.

---

[10] The plaintiff in *Montoya* claimed disability "due to the following impairments: numbness in her right back, right buttock, right calf and right toes; injuries to her lower and upper back and right buttocks, right hand weakness and pain, right-sided carpal tunnel syndrome, right finger pain, trigger finger on the right hand, pinched nerve in the right shoulder; inability to sit, stand, or walk for more than 10 minutes at a time, inability to carry objects weighing more than 10 pounds, and inability to drive without pain." *Montoya*, 2019 WL 6167951, at *2. The plaintiff's treating physician opined that plaintiff had the following pertinent limitations: (1) "stand and walk less than one hour at a time, and less than one hour in an 8-hour workday;" (2) "occasionally climb stairs, stoop, crouch, and kneel;" and (3), "never climb ladders and scaffolds, crawl, or balance." *Id.* at *9.

[11] The ALJ noted that "the claimant discussed nightmares about his childhood trauma and the fear underlying his anger with his counselor," AR at 28 (citing AR at 547, 559), and that despite Plaintiff's recovery success he continued to "struggle with anger." *Id.* (citing AR at 490).

Laughter's notes on Plaintiff's challenges with anxiety. AR at 26, 28 (noting that Plaintiff "occasionally displayed an anxious or dysphoric mood and rapid speech" and that Plaintiff repeatedly reported to Dr. Laughter that he was feeling irritable, sad, and anxious). Therefore, because the ALJ included portions of Dr. Laughter's treatment notes tending to support a finding of "disabled," the Court does not find that the ALJ improperly cherry-picked the record. *See Montoya*, 2019 WL 6167951, at *10–11.

> ### 5.   The ALJ Did Not Err in Discounting Dr. Laughter's Opinion an Issue Reserved to the Commissioner

Plaintiff argues that the ALJ erred by failing to address whether Dr. Laughter's opinion that Plaintiff was unable to work was supported by the record. ECF 17 at 18–19.

A statement by a medical source that a claimant is "unable to work" is not a medical opinion because it is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). When such an opinion is rendered, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported." SSR 96-5p, 1996 WL 374183, at *2.

Dr. Laughter's opinion that Plaintiff was "unable to work due to the severity of her [sic] medical condition," AR at 461, is precisely the type of finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). *One* of the reasons the ALJ identified for giving Dr. Laughter's opinion limited weight was because "the determination of disability is a matter reserved for the [C]ommissioner." AR at 27 (citing 20 C.F.R. § 416.927). The Tenth Circuit has repeatedly held that, in addition to the other evidence of record, an ALJ may consider whether a medical source has opined on an issue reserved to the Commissioner in deciding what weight to give an opinion. *See, e.g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1188–89 (10th Cir. 2008); *Gutierrez v. Commissioner, SSA*, 799 F.3d F. App'x 593, 597–98 (10th Cir. 2020) (unpublished); *Paulsen v. Colvin*, 665 F.

App'x 660, 667 (10th Cir. 2016) (unpublished) ("In support of his conclusion that Dr. Snodgrass's opinion was not entitled to any weight . . . the ALJ correctly stated the law when he said that 'the determination of whether [the plaintiff] is disabled is an issue reserved to the Commissioner.'" (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)); *Duncan v. Colvin*, 608 F. App'x 566, 573 (10th Cir. 2015) (unpublished). The ALJ was thus permitted to consider both the fact that Dr. Laughter opined on an issue reserved to the commissioner and the evidence contradicting such an opinion. And because the ALJ gave good reasons for the weight given to this opinion, the Court holds that the ALJ did not err in this respect.

### B. The ALJ Did Not Pick and Choose Among the Moderate Limitations Found by Dr. Atkins

Plaintiff argues that the ALJ erred by not explaining why the RFC failed to account for some parts of Dr. Atkins's Mental Residual Functional Capacity Assessment ("MRFCA"). ECF 17 at 20–23.[12]

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Importantly, it is the ALJ—not a physician—who is charged

---

[12] Plaintiff also insists that the ALJ was required to incorporate each of the moderate limitations noted by Dr. Atkins. ECF 17 at 21; ECF 21 at 9. But Plaintiff does not acknowledge the context in which those limitations were identified. Dr. Atkins made his opinion using a particular form. *See* AR at 90–95. The limitations identified by Dr. Atkins were created in response to questions posed by that form, intended to *aid* Dr. Atkins in drafting his MRFCA. *See id.* In fact, the form itself indicates that the "the actual [MRFCA] is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." *Id.* Accordingly, the scope of the Court's analysis with respect to this issue is limited to the narrative portion of Dr. Atkins's opinion. *See Smith v. Colvin*, 821 F.3d 1264, 1268 n.1, 1269 n. 2 (10th Cir. 2016) ("Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the administrative law judge's findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."); *see also Rush v. Saul*, 389 F. Supp.3d 957, 969 (D.N.M. 2019) ("When the doctor fashions an RFC in his narrative opinion, that controls over any moderate worksheet limitations because the worksheet serves as an 'aid' to an opinion and is not the opinion itself." (citing *Smith*, 821 F.3d at 1269 n.2)).

with determining the RFC. *Id.* (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The Tenth Circuit has also rejected the argument that "there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949.

The ALJ appropriately accounted for the limitations found by Dr. Atkins, who opined that Plaintiff "could interact appropriately on a superficial level." AR at 92. The ALJ incorporated that assessment by restricting Plaintiff to limited interactions with supervisors and co-workers and infrequent contact with the public. AR at 23–24. If anything, this portion of the RFC appears to be *more* restrictive than Dr. Atkins's MRFCA by limiting Plaintiff to fewer interactions. *Cf. Chapo*, 682 F.3d at 1288 ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (holding that a claimant was not prejudiced by an RFC that only differed with a consultative examiner's findings so as to be more favorable to the claimant). Similarly, the ALJ accounted for Dr. Atkins's opinion that Plaintiff could "respond appropriately to changes in a routine work setting if introduced slowly," by limiting him to "few changes in a routine work setting." AR at 23–24, 92.[13]

In addition, Plaintiff challenges the ALJ's finding that his "time off task [could] be accommodated by normal breaks" [AR at 92] as inconsistent with Dr. Atkins's finding that Plaintiff

---

[13] Plaintiff cites to *Flores v. Saul*, No. CV 19-331 CG, 2020 WL 822968 (D.N.M Feb. 19, 2020), in support of his position that the ALJ erred by not confining him to *slowly* introduced changes in a routine work setting. ECF 17 at 22. But in *Flores*, the ALJ gave great weight to a medical source who opined that the plaintiff would "require additional time and support to adapt to changes in the work setting," and the ALJ restricted the plaintiff to "routine changes in the work setting." 2020 WL 822968, at *6. In other words, the ALJ totally disregarded that portion of the medical source's opinion without explanation. *Id.* Here, however, the ALJ appropriately accounted for Dr. Atkins's recommendation by restricting Plaintiff to "few changes." AR at 23–24.

could "attend and concentrate [for] short periods" [AR at 23–24]. ECF 17 at 22–23. As Plaintiff correctly notes, "[a]n ALJ is not entitled to pick and choose through an *uncontradicted* medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga*, 482 at 1208 (emphasis added); *see also* ECF 17 at 21. Because Dr. Atkins's opinion on Plaintiff's ability to concentrate was not *uncontradicted*, however, the ALJ did not violate *Haga*'s rule. Following his examination of Plaintiff, Dr. Adams noted that Plaintiff "was able to pay attention and concentrate." AR at 25 (citing AR at 456). Moreover, the ALJ discussed the instances in which Plaintiff worked temporary jobs, demonstrating that Plaintiff could concentrate sufficiently to perform a normal workday. *Id.* at 26 (citing AR at 575, 586, 597).[14] Further, Dr. Laughter's treatment notes repeatedly reflected that Plaintiff's concentration was intact. *Id.* at 25–26 (citing AR at 462–64, 471–72, 481–82, 484, 490, 496–98, 507–09, 524–29, 537–40, 550–52, 567–71). Because the ALJ was entitled to resolve any perceived conflicts between Dr. Atkins's opinion and other substantial evidence in the record, the ALJ did not commit reversible error by determining that Plaintiff's time off task could be accommodated by normal breaks. *Haga*, F.3d at 1208 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Casias*, 933 F.2d at 801 (10th Cir. 1991)).

### C. Although Dr. McGaughey's Findings Were Inconsistent, the ALJ's Failure to Discount Them Was Not Reversible Error

Plaintiff's final argument is that the ALJ erred by giving great weight to Dr. McGaughey's opinion, reasoning that his opinion was not substantial evidence because (1) the narrative portions of the MRFCA consisted entirely of cross-references to his Psychiatric Review Technique ("PRT")

---

[14] Notably, for one of these projects, Plaintiff "worked full-time" for two weeks. AR at 26 (citing AR at 608). And Plaintiff even reported to MSW Tamanini that he "worked round [sic] the clock" one night to complete this project. AR at 608.

and (2) the opinion was internally inconsistent. *Id.* at 24 (citing AR at 76–78).[15] Although the Court ultimately agrees that Dr. McGaughey's opinion was flawed and therefore could not be considered substantial evidence capable of supporting the ALJ's step four RFC findings, the Court concludes that the ALJ's overall disability determination was still supported by other substantial evidence.

Dr. McGaughey's opinion did not comply with the SSA's Program Operations Manual System ("POMS"). Psychological consultants like Dr. McGaughey complete their medical evaluation of a claimant using a variety of forms including what are known as the PRT and the MRFCA. *Milner v. Berryhill*, Civ. No. 16-1050 GJF, 2018 WL 461095, at *11 (D.N.M. Jan. 18, 2018). These documents serve different purposes. The MRFCA "addresses twenty specific mental functions relevant to the vocational determinations required at steps *four* and *five*." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013) (unpublished) (emphasis added). The PRT, on the other hand, "is used to assess mental impairments for purposes of steps *two* (identifying severe impairments) and *three* (rating severity for the listings)." *Id.* (citing 20 C.F.R. §§ 404.1520a,

---

[15] In his reply brief, Plaintiff attempts to recharacterize this argument. Plaintiff takes the position that he was "not arguing, as claimed by the Commissioner, that the error was Dr. McGaughey's failure to resolve the conflict in his decision, but rather that the ALJ failed to resolve the conflicts that Dr. McGaughey failed to explain in his MRFCA." ECF 21 at 11. But the Court reads Plaintiff's initial briefing the same as the Commissioner [ECF 19 at 15–16]. Plaintiff's initial briefing simply did not make the latter argument. ECF 17 at 23–26. Instead, Plaintiff devoted the entirety of this section to arguing that Dr. McGaughey's opinion was internally inconsistent. *Id.* ("Dr. McGaughey's [sic] PRT narrative contradicts the moderate limitations he noted in what was formerly Section 1 of the MRFCA without explanation . . . This Court has found that such inconsistency prevents the use of a MRFCA as substantial evidence to support an ALJ's RFC finding." (internal citations omitted)). Because the argument that the ALJ was required to "resolve the conflicts that Dr. McGaughey failed to explain in his MRFCA" was not brought in Plaintiff's initial briefing, the Court does not address it. *Mehaffey v. Berryhill*, Civ. No. 16-78 MV/GJF, 2017 WL 3190657, at *5 (D.N.M. July 25, 2017) (citing *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1501 (10th Cir. 1992) (explaining that because this Court acts as a first-tier appellate court, this Court applies the rule that arguments raised for the first time in a reply brief are generally deemed waived)).

416.920a) (emphasis added).

The MRFCA contains two relevant portions. In the first, a Psychological Consultant uses a rating to evaluate a claimant's ability to perform a range of work-related activity. *Milner*, 2018 WL 461095, at *12 (citing POMS § 24510.063(B)(2)). In the second, a Psychological Consultant is instructed to "[d]escribe, in detail, the mental capacities, limitations, and any other information that is important in the comprehensive expression of mental RFC." POMS § 24510.065(B)(1). In filling out the narrative portions of the MRFCA, however, Dr. McGaughey merely wrote "see PRT." AR at 75–78. "In so doing, [Dr. McGaughey] haphazardly conflated different types of evaluations of Plaintiff's mental impairments that are used at different stages of the sequential evaluation process." *Milner*, 2018 WL 461095, at *12.

The Court agrees that Dr. McGaughey's opinion was also internally inconsistent. For example, Dr. McGaughey's PRT assessment (which he cross-referenced in the narrative part of the MRFCA) read:

> Claimant retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficiently to complete a routine work day without significant interruptions from psychologically-based symptoms, exercise reasonable judgment, interact appropriately with coworkers, supervisors, and the general public on an incidental basis, and respond appropriately to changes in a routine work setting.

AR at 74–75. At the same time, however, Dr. McGaughey opined that Plaintiff was "moderately limited" in his abilities to "work in coordination with or in proximity to others without being distracted by them" and to "respond appropriately to changes in the work setting." *Id.* at 76–78. Importantly, an assessment of a moderate impairment does not equate to no impairment. *See Haga*, 482 F.3d at 1209. Because Dr. McGaughey's MRFCA concluded that Plaintiff had absolutely no impairments in several areas in which he had determined that Plaintiff had moderate limitations,

23

his opinion was internally inconsistent and therefore could not be relied upon. *Milner*, 2018 WL 461095, at *12. Consequently, these defects made it so that Dr. McGaughey's opinion could not be used as substantial evidence supporting the ALJ's assessment of Plaintiff's RFC. *Id.*

Despite this error, however, the ALJ's decision was still supported by substantial evidence. Again, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Harmless error analysis is appropriate "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005). Even without Dr. McGaughey's opinion, the ALJ *could* and *did* rely on other evidence within the record, including: (1) over a thousand pages of treatment notes prepared by Dr. Laughter and MSW Tamanini documenting largely mild symptoms, AR at 25–27, 459–1675; (2) Dr. Adams's opinion and report of his examination of Plaintiff, *Id.* at 25, 454–57; (3) Dr. Atkins's opinion, AR at 29, 89, 92;[16] and (4) Plaintiff's own testimony stating that he had spent a considerable amount of time trying to find work but was unsuccessful because of his criminal history—not his disability. *Id.* at 41–49. Moreover, despite purporting to afford Dr. McGaughey's opinion "great weight," the ALJ issued a more restrictive RFC than Dr. McGaughey's MRFCA.[17]

---

[16] The Court notes that Plaintiff did not argue that Dr. Atkins's opinion was not substantial evidence. This point is important because, with minor exceptions, Dr. Atkins's opinion was largely similar to Dr. McGaughey's. *Compare* AR 74–75, *with* AR at 92. Moreover, as discussed *supra*, the RFC closely tracked Dr. Atkins's opinion. *Compare* AR at 24–25, *with* AR at 92. The Court therefore does not find that the exclusion of Dr. McGaughey's opinion would have led any reasonable administrative fact finder to a "disabled" finding.

[17] In relevant part, Dr. McGaughey opined that Plaintiff had the ability to (1) "exercise reasonable judgment," (2) "respond appropriately to changes in a routine work setting," and (3) "interact appropriately" with the "general public

Therefore, even if Dr. McGaughey's opinion were afforded less weight (or had been completely disregarded), the Court concludes that no reasonable fact finder could have found differently than the ALJ.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***

---

on an incidental basis." AR at 75. In contrast, the RFC limited Plaintiff to (1) using judgment in "simple work-related decisions," (2) "tolerating *few* changes in a routine work setting," and (3) "infrequent *superficial* contact with the public." AR at 24–25 (emphasis added). Accordingly, because the RFC was more favorable to Plaintiff than Dr. McGaughey's findings, the ALJ's decision to confer "great weight" to Dr. McGaughey's opinion did not prejudice Plaintiff. *Cf. Keyes-Zachary*, 695 F.3d at 1163 (emphasizing that an alleged error in weighing a medical opinion would not have prejudiced a claimant because the ALJ developed an RFC consistent with the opinion in some areas but more favorable to the claimant in others).